Katherine S. WALTON, Petitioner,

v.

The STATE of Colorado; its agency, the State Board of Agriculture; and its agent-employee, Dennis Dalton, Respondents.

No. 97SC534.

Supreme Court of Colorado,
En Banc.

Nov. 23, 1998.

Kenneth Dresner, Colorado Springs, Walter H. Sargent, Colorado Springs, for Petitioner.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Garth C. Lucero, Timothy R. Arnold, Deputy Attorneys General, Jane R. Christman, First Assistant Attorney General, Thomas C. Sullivan, Assistant Attorney General, Civil Litigation Section, Tort Litigation Unit, Denver, for Respondents.

Justice HOBBS delivered the Opinion of the Court.

We exercised our certiorari jurisdiction to review the court of appeals decision in *Walton v. State,* No. 96CA1032 (Colo.App. May 1, 1997) (not selected for publication). We accepted four issues related to whether Katherine S. Walton (Walton) can maintain her negligence action against the State in light of Colorado's Governmental Immunity Act

(CGIA).[1] Walton suffered injuries while responding to the request of her art class teacher, Dennis Dalton (Dalton),[2] for students to clean a space used for storage located high above the floor of a sculpture shop at the University of Southern Colorado. A portable extension ladder she was climbing slipped out from under her.

Walton brought a negligence action against Dalton, the State Board of Agriculture,[3] and the State of Colorado (the State). Upon renewal of the State's initial motion to dismiss on the basis of governmental immunity, the trial court made factual findings that a dangerous condition of a public facility existed in conjunction with the university's request for students to clean the storage space. Consequently, the trial court concluded that Walton could proceed with her suit under the waiver provided by section 24–10–106(1)(c), 7 C.R.S. (1998). The court of appeals reversed the trial court, holding that Walton's injuries occurred from an activity within the building, specifically Walton's use of a ladder, and not from a dangerous condition of a public building within the meaning of the CGIA. *See Walton*, No. 96CA1032, slip op. at 6–7.

We defer to the trial court's findings of fact under a clearly erroneous standard of review and agree with its conclusion of law. Accordingly, we reverse the judgment of the court of appeals, with directions to reinstate Walton's negligence action against the State.

## I.

Walton and other art class students answered Dalton's request to clean a space used for storage high above the floor of the sculpture shop. This space consisted of an open area formed by the distance between two ceilings, a lower ceiling above an office constructed within the shop area and a higher ceiling that extended over the entire shop area that included the sculpture classroom and the office.

Juxtaposition of the two ceilings created a four to five foot vertical space between them. The parties refer to this space as "the loft." Sculpture teachers prior to Dalton used the loft to store art supplies and waste materials.

Dalton was new to the University of Southern Colorado. At the outset of the fall term, a safety officer of the university asked him to remove all of the items from the loft because of concern about damaged tiles in the higher ceiling. In turn, Dalton called upon his students to clean the loft.

No stairway or fixed ladder to the loft existed. The university supplied Dalton with a portable extension ladder. Walton ascended the ladder to hand a broom to a fellow student for sweeping the loft following removal of the materials. The building's custodian had recently stripped and sealed the floor with a finish that made it "hard to walk on but easy to sweep." The ladder slipped on the floor beneath Walton and she fell,

1. We granted certiorari on the following issues:
 (1) Whether this court should hold that the "clearly erroneous" standard of review should be applied by the court of appeals in reviewing a district court's finding that a plaintiff's injuries stemmed from a defective building condition in a public facility.
 (2) Whether the court of appeals erred in overlooking this court's decision in *Bertrand v. Board of County Commissioners*, which requires that the statutory immunity created by the Colorado Governmental Immunity Act be construed narrowly.
 (3) Whether this court should clarify the law regarding the distinction between an injury that arises from an activity within a public facility and an injury that arises from an activity inside a building that makes use of a physical or structural defect of the building.
 (4) Whether this court should resolve the irreconcilable split of authority regarding the proper interpretation of the Colorado Governmental Immunity Act between two divisions of the court of appeals where *Hendricks v. Weld County School District* is in direct contradiction with the court of appeals' decision below.

2. Section 24–10–110(1) provides that a public entity shall be liable for the costs of the defense of its public employee and the payment of all judgments and settlements of claims "where the claim against the public employee arises out of injuries sustained from an act or omission of such employee occurring during the performance of his duties and within the scope of his employment." § 24–10–110(1)(b), 7 C.R.S. (1998).

3. The State Board of Agriculture, created by section 23–30–101, 7 C.R.S. (1998), is the governing body of the University of Southern Colorado. *See* § 23–55–103, 7 C.R.S. (1998).

fracturing her right leg, ankle, foot, and right arm.

Earlier, Dalton helped some students move a three-hundred-pound desk against the ladder to brace it. Dalton left the room as the cleaning effort neared its completion. Nothing secured the ladder at the time Walton ascended with the broom in hand.

Walton filed her negligence action against the State. The State responded with a motion to dismiss on the pleadings under C.R.C.P. 12(b)(1), seeking to invoke governmental immunity from suit under the CGIA. At that time, neither the State nor Walton requested an evidentiary hearing. The trial court denied the motion to dismiss, and the parties proceeded with trial preparation.

Slightly over two years after denial of the motion to dismiss, the State sought reconsideration of the trial court's order and requested an evidentiary hearing on the jurisdictional issue of governmental immunity. Noting that the time for reconsideration of its previous order had long since passed, the trial court nevertheless convened the evidentiary hearing because "subject matter jurisdiction can be ... [raised] at any stage of the proceedings."

Following the evidentiary hearing, the trial court found that "the physical condition of the building ... combined with the use of it ... created a dangerous condition of a public facility." Consequently, the court concluded that Walton's tort action was within the waiver of governmental immunity contained in CGIA section 24–10–106(1)(c).

The State then took an interlocutory appeal under CGIA section 24–10–108, 7 C.R.S. (1998). The court of appeals reversed and directed dismissal of Walton's complaint. It concluded that Walton's injuries resulted from an "activity" within a public facility— climbing a ladder—not from a dangerous condition of the building. *See Walton*, No. 96CA1032, slip op. at 6. The court of appeals reasoned that "it is undisputed that the ladder was not a part of the building itself, and plaintiff's injuries arose from her use of the ladder ... [P]laintiff's injuries resulted from an activity conducted within the building and not from a physical or structural defect of the building." *Id.* at 6–7.

In support of the court of appeals judgment, the State argues to us that governmental immunity exists to bar this suit under the "activity" exception to the immunity waiver of section 24–10–106(c) enunciated in *Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo.1992), because Walton's injuries resulted "from the use of an extension ladder in a public building and not as a result of the condition of the building itself." In the alternative, the State contends that Walton's lawsuit rests on the theory of "no access to the loft area except through the use of a ladder, an issue of design." Thereby, the State seeks to invoke another exception to the immunity waiver that a dangerous condition of a building shall not exist solely because the design of the facility is inadequate. *See* § 24–10–103(1), 7 C.R.S. (1998).

As a threshold matter, Walton asserts that we lack jurisdiction over this case because (1) the State did not take an interlocutory appeal from the trial court's initial order denying its CGIA motion to dismiss on the pleadings and (2) the State is now foreclosed from seeking appellate review of its immunity claim. We reject this contention, exercise jurisdiction, and reverse the judgment of the court of appeals with directions to reinstate Walton's complaint.

## II.

We exercise appellate jurisdiction over this case because the State timely took its interlocutory appeal after the trial court held an evidentiary hearing on the CGIA jurisdictional issue and denied the State's motion to dismiss based thereon. On the merits, we defer to the trial court's jurisdictional findings under a clearly erroneous standard of review. On the basis of those findings, we agree with the trial court's conclusion of law that Walton may proceed under the CGIA waiver of section 24–10–106(1)(c) for her negligence action against the State. Walton suffered injury as a result of the State asking students to engage in the building maintenance activity of cleaning a high storage space using a portable extension ladder. This created a known or reasonably foresee-

able risk through a dangerous condition of a public building within the meaning of sections 24–10–103(1) and 24–10–106(1)(c).

## A.

### Jurisdiction over this CGIA Interlocutory Appeal

■ Twice the State attempted under the CGIA to obtain dismissal of Walton's negligence action, first on the pleadings prior to answering the complaint and two years later when it requested an evidentiary hearing on the jurisdictional issue of governmental immunity from suit. Walton contends that the State is pursuing an untimely interlocutory appeal because it failed to appeal the denial of its initial C.R.C.P. 12(b)(1) motion to dismiss within forty-five days as required under C.A.R. 4(a), pursuant to sections 24–10–108[4] and 24–10–118(2.5),[5] 7 C.R.S. (1998) (providing that trial court's order denying the State's immunity motion "shall be a final judgment and shall be subject to interlocutory appeal"). Walton raises this issue for the first time in this court; consequently, the State argues that we should refuse to entertain it.

Because this question raises an important matter of appellate court and trial court jurisdiction, we proceed to resolve it. We hold that the trial court properly held an evidentiary hearing at the State's request; because the State then took a timely interlocutory appeal after the trial court made findings of fact and ruled against dismissal, we have jurisdiction over the case.

■ First, we reiterate our previous holdings that the legislature has authorized interlocutory appeals from pre-trial governmental immunity rulings. Sections 24–10–108 and 24–10–118(2.5) provide that orders refusing to dismiss a complaint on sovereign immunity grounds are final judgments for purposes of taking an interlocutory appeal. See §§ 24–10–108, –118(2.5), 7 C.R.S. (1998). "Interlocutory appeals are the exception to the general rule that an appeal cannot be taken from anything other than a final decision." *Furlong v. Gardner*, 956 P.2d 545, 548 (Colo.1998) (quoting *City of Lakewood v. Brace*, 919 P.2d 231, 238 (Colo.1996)). In *Furlong*, the trial court denied a motion for summary judgment seeking dismissal of the cause of action based on governmental immunity. We recognized the right of the public entity "provided explicitly by statute, to have the trial court's decision reviewed on an interlocutory basis by an appellate court." *Furlong*, 956 P.2d at 551.

■ Invocation of governmental immunity under the CGIA requires a jurisdictional analysis. See *Brace*, 919 P.2d at 244; *Fogg v. Macaluso*, 892 P.2d 271, 276–77 (Colo. 1995) (holding that section 24–10–108 invokes subject matter jurisdiction). Courts may examine an issue of subject matter jurisdiction at any stage in the proceeding. See *Sanchez v. State*, 730 P.2d 328, 331 (Colo.1986).

We must apply the terms of the statute in a manner that effectuates legislative intent and provides understandable direction for litigants, counsel, and courts. In presuming that the General Assembly intended that sections 24–10–108 and 24–10–118(2.5) have a just and reasonable effect, we recognize that the General Assembly did not consider the

---

4. Section 24–10–108 provides that:
 Except as provided in sections 24–10–104 to 24–10–106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant. If a public entity raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion. *The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.*

§ 24–10–108, 7 C.R.S. (1998) (emphasis added).

5. Section 24–10–118(2.5) provides that:
 If a public employee raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery; except that any discovery necessary to decide the issue of sovereign immunity shall be allowed to proceed, and the court shall decide such issue on motion. *The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.*
 § 24–10–118(2.5), 7 C.R.S. (1998) (emphasis added).

phrases "final judgment" and "interlocutory" to be mutually exclusive terms. *See Industrial Claim Appeals Office v. Orth,* 965 P.2d 1246, 1253 (Colo.1998). Through its use of "final judgment" in sections 24–10–108 and 24–10–118(2.5), the legislature intended to authorize the taking of CGIA interlocutory appeals and avoid the uncertainty of having to obtain trial court certification under C.R.C.P. 54(b), a discretionary matter. Under these provisions, the State has a right, not an obligation, to take an interlocutory appeal.

■■■ The General Assembly did not intend to mandate immediate appeal of a CGIA jurisdictional ruling against the public entity as the only means to preserve its governmental immunity claim. Interlocutory appeals delay the resolution of suits in the trial court. The import of sections 24–10–108 and 24–10–118(2.5), read as a whole, is that trial court proceedings can be interrupted by the public entity's interlocutory appeal. However, a public entity may elect to forego an interlocutory appeal under the CGIA in favor of pursuing trial or settlement on the claims, while preserving the CGIA issue in the event of an appeal following final disposition of the case in the trial court.[6]

■■ Here, the trial court granted the State's request for an evidentiary hearing after denying the motion to dismiss on the pleadings. When disputed facts exist regarding application of the CGIA's immunity bar, the trial court on its own motion may hold an evidentiary hearing, and it should do so upon a public entity's request. *See Swieckowski v. City of Fort Collins,* 934 P.2d 1380, 1384 (Colo.1997) ("Any factual dispute upon which the existence of jurisdiction may turn is for the district court to resolve."); *Brace,* 919 P.2d at 244.

In *Brace,* 919 P.2d at 244–45, we emphasized the role of the trial court as fact finder in determining the existence of the CGIA's jurisdictional prerequisites. Neither Walton nor the State requested an evidentiary hearing when the State brought its C.R.C.P.

12(b)(1) motion to dismiss on the pleadings. The parties chose instead to proceed into discovery and trial preparation after the State filed an answer containing the State's immunity claim. As here, factual development of the case through discovery in the course of trial preparation may aid a more informed jurisdictional determination at a later stage of pre-trial proceedings.

A plaintiff may avoid delay in resolving the jurisdictional immunity issue by seeking an evidentiary hearing when the State brings its C.R.C.P. 12(b)(1) motion to dismiss, if the State does not request one. Once the trial court holds an evidentiary hearing, makes findings of fact, and rules against the State's CGIA motion based on those findings, the State cannot delay bringing a timely interlocutory appeal under the provisions of C.A.R. 4 and sections 24–10–108 and 24–10–118(2.5), should it wish to appeal at the pre-trial stage. On the other hand, the public entity need not pursue an interlocutory appeal; it may proceed to trial, having asserted its claim of immunity prior to trial, and raise the issue on appeal if a judgment resolving the case enters against it.

In summary, we do not read the reference in sections 24–10–108 and 24–10–118(2.5) to "final judgment" as requiring the public entity to pursue an interlocutory appeal whenever a trial court denies its pre-trial motion to dismiss. Significantly, the legislature provided that the trial court's CGIA ruling is "subject to interlocutory appeal," §§ 24–10–108, –118(2.5), 7 C.R.S. (1998), not that the right to file an interlocutory appeal must be exercised to preserve the CGIA issue in the case. We disapprove of any suggestion to the contrary contained in *Buckles v. State,* 952 P.2d 855 (Colo.App.1998).

The State in Walton's case filed a timely interlocutory appeal from the trial court's order denying its motion to dismiss following an evidentiary hearing; thus, we have jurisdiction, as did the court of appeals.

---

6. The bar to suit established by the CGIA is for the governing body of the public entity to raise or waive. "Under the [C]GIA, a governing body has authority to waive the immunity provisions of that act and allow itself to be sued, and/or to settle a claim as to which it might have a defense in law or in fact." *Brock v. Nyland,* 955 P.2d 1037, 1042 n. 5 (Colo.1998).

## B.

### *Waiver of Governmental Immunity*

■ We accepted the certiorari issues to examine and resolve Walton's claim that the court of appeals has misapplied our decisions in *Jenks v. Sullivan,* 826 P.2d 825 (Colo.1992), and *Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994). In *Jenks,* we identified a third party "activity" exception to the CGIA's waiver of governmental immunity for a dangerous condition of a public building. *See Jenks,* 826 P.2d at 827. In *Bertrand,* we held that courts are to construe the CGIA's immunity provisions strictly and its waiver provisions deferentially. *See Bertrand,* 872 P.2d at 227. Applying this rule of construction and upholding the trial court's factual findings, we determine that Walton's common law negligence action is within the CGIA's immunity waiver for a dangerous condition of a public building.

### 1.

### *Common Law Tort Actions and the CGIA*

■ "[W]e infer no abrogation of a common law right of action absent clear legislative intent." *Bayer v. Crested Butte Mountain Resort, Inc.,* 960 P.2d 70, 74 (Colo. 1998). Under the common law of torts, a property owner or occupant has an affirmative duty to exercise reasonable care for the protection of invitees against known or reasonably discoverable dangers. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61, at 419 (5th ed.1984).[7] This duty "remains one of exercising due care, and due care depends upon the attendant circumstances." *Bayer,* 960 P.2d at 76 (quoting *Summit County Dev. v. Bagnoli,* 166 Colo. 27, 38–39, 441 P.2d 658, 664 (1968)). Negligent violation of this duty of care gives rise to the victim's cause of action for damages. *See id.* § 57, at 386; *see also Safeway*

*Stores, Inc. v. Smith,* 658 P.2d 255, 259 (Colo. 1983) ("The proprietor is guilty of negligence only if he fails to use reasonable care under the circumstances to discover the foreseeable dangerous condition and to correct it or to warn customers of its existence.").

However, the CGIA establishes immunity for public entities and public employees against actions that lie or could lie in tort, except as provided by its terms. *See* §§ 24–10–102, –106, 7 C.R.S. (1998). Prior to 1971, governmental immunity from suit existed in this state by reason of Colorado's common law. *See Bertrand,* 872 P.2d at 225–26.

In 1971, we decided a trilogy of cases fundamentally altering Colorado's common law of governmental immunity. *See Evans v. Board of County Comm'rs,* 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School Dist.,* 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971).[8] We held governmental immunity from tort suits to be inequitable and unjust, because (1) a victim could recover from a private entity but not from a public entity despite like circumstances, and (2) the public entity could avail itself of liability insurance. *See Evans,* 174 Colo. at 100–01, 482 P.2d at 969–70. Since our decisions had established the common law doctrine of governmental immunity in this state, we departed from them prospectively because of long reliance placed on them. *See id.* at 106, 482 P.2d at 972. We explained that the General Assembly could choose whether to reestablish governmental immunity by statute:

> The effect of this opinion and its two contemporaries is simply to undo what this court has done and leave the situation where it should have been at the beginning, or at least should be now: in the hands of the General Assembly of the State of Colorado. If the General Assem-

---

**7.** The General Assembly has provided that a landowner's liability should depend upon the landowner's knowledge of the other person's presence and the reason for the presence on the property. *See* § 13–12–115, 5 C.R.S. (1998); *cf. Gallegos v. Phipps,* 779 P.2d 856, 861 (Colo. 1989).

**8.** We utilized the term "sovereign immunity" in our common law decisions when referring to the

State of Colorado and "governmental immunity" when addressing political subdivisions of the state. *See Evans,* 174 Colo. at 102, 482 P.2d at 970. In this opinion, we employ the generic term "governmental immunity" to include both the state and its political subdivisions because the legislature has denominated this legislation as the Colorado *Governmental Immunity* Act. *See* § 24–10–101, 7 C.R.S. (1998) (emphasis added).

bly wishes to restore sovereign immunity and governmental immunity in whole or in part, it has the authority to do so.

*Id.* at 105, 482 P.2d at 972.

In response, the General Assembly adopted the CGIA. *See* ch. 323, sec. 1, §§ 130–11–1 to –17, 1971 Colo. Sess. Laws 1204, 1204–11. The CGIA establishes governmental immunity from suit in tort actions as an initial matter but waives immunity under specified circumstances. *See* § 24–10–106, 7 C.R.S. (1998).

On the one hand, its purpose is to protect the public against unlimited liability and excessive fiscal burdens:

> [T]he state and its political subdivisions provide essential public services and functions and that unlimited liability could disrupt or make prohibitively expensive the provision of such essential services and functions ... [and] that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens.

§ 24–10–102, 7 C.R.S. (1998).

On the other hand, its purpose is to allow the common law of negligence to operate against governmental entities *except* to the extent it has barred suit against them. *See* ch. 323, sec. 1, § 130–11–6(1), 1971 Colo. Sess. Laws 1204, 1206; *State v. Moldovan*, 842 P.2d 220, 222 (Colo.1992) (holding that purposes of CGIA include permitting "a person to seek redress of personal injuries caused by a public entity"). The legislature so stated in CGIA section 24–10–102, 7 C.R.S. (1998): "The general assembly also recognizes that the supreme court has abrogated the doctrine of sovereign immunity effective July 1, 1972, and that thereafter the doctrine shall be recognized only to such extent as may be provided by statute."

Because governmental immunity derogates Colorado's common law, the CGIA's waiver provisions are entitled to deferential construction in favor of victims injured by the negligence of governmental agents, while the immunity provisions are subject to strict construction. *See Bertrand*, 872 P.2d at 227 (holding that sovereign immunity provisions must be strictly construed) (overruling, on this point, *Jenks*, 826 P.2d at 827).

### 2.

*Clearly Erroneous Standard of Review*

 Governmental immunity is an issue of subject matter jurisdiction. *See Swieckowski*, 934 P.2d at 1383–84; *Fogg*, 892 P.2d at 277. Any factual dispute regarding the court's jurisdiction is for determination by the trial court, not the jury. *See Brace*, 919 P.2d at 244; *Fogg*, 892 P.2d at 276.

 When resolution of the jurisdictional issue involves a factual dispute, the clearly erroneous standard of review, not the de novo standard, applies to appellate review of the trial court's findings. *See Swieckowski*, 934 P.2d at 1384; *Trinity Broad. v. City of Westminster*, 848 P.2d 916, 924–25 (Colo. 1993).[9] If the plaintiff's factual allegations are undisputed, the issue is one of law and an appellate court is not bound by the trial court's determination. *See Swieckowski*, 934 P.2d at 1384.

Although the State argues on appeal that no factual dispute exists in Walton's case and we can decide the issue of governmental immunity as a matter of law, our review of the record convinces us otherwise. A dispute existed as to whether a slippery floor, use of the ladder, inaccessibility of the storage space, or a combination of them, caused Walton's accident. The State attempted to show through its evidentiary presentation that the injuries resulted from Walton's third party activity, not because of a dangerous

9. Under Fed.R.Civ.P. 12(b)(1), which is identical to C.R.C.P. 12(b)(1), "[o]n a dismissal based on a factual challenge, as with any other review of a court's resolution of factual disputes, the appellate court will accept the factual determination that underpins the decision unless it is clearly erroneous." 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.30[5], at 12–41 to 42 (3d ed.1998). In addition, "when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* at § 12.30[4], at 12–38.

condition associated with the building's construction or maintenance. In the alternative, the State argued that lack of access to the loft occurred solely because of inadequate design.

The trial court found for jurisdictional purposes that the State had created a dangerous condition of a public facility through a combination of the recently sealed floor and the use of a portable extension ladder placed thereon to access the otherwise inaccessible storage area for cleaning.[10] We now examine the CGIA's provision regarding dangerous condition of a public facility, in light of those findings.

### 3.

### Dangerous Condition of a Public Facility

■ We give effect to the CGIA's legislative intent. See Brock, 955 P.2d at 1040. We look to the statutory language, giving words and phrases their plain and ordinary meaning. See id. at 1040–41. CGIA section 24–10–106(1)(c) provides that governmental immunity does not exist under circumstances of a "dangerous condition of any public building." Section 24–10–103(1) defines "dangerous condition" as:

[A] physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. Mainte-

nance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility. For the purposes of this subsection (1), a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate.

§ 24–10–103(1), 7 C.R.S. (1998).

This provision establishes the following elements for determining a waiver of governmental immunity involving a dangerous condition of a public facility. The suit is within the waiver of section 24–10–106(1)(c) [11] if the injuries occurred as a result of the (1) physical condition of a public facility or the use thereof, (2) which constitutes an unreasonable risk to the health or safety of the public, (3) which is known to exist or should have been known to exist in the exercise of reasonable care, and (4) which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. See § 24–10–103(1), 7 C.R.S. (1998).

The condition must be associated with construction or maintenance, not solely design, of the public facility. See § 24–10–103(1), 7 C.R.S. (1998); Swieckowski, 934 P.2d at 1386 (precluding suit for injuries stemming from developer's roadway expansion design and

---

**10.** The trial court's findings included the following:

Here I have not only the complaint and the pleadings, but I now have testimony; and, frankly, I see this case as a floor, ladder and loft case, not just a ladder and not a floor, but a building that was—that has a situation where the only access to what has been a storage area is through the use of a ladder; and the ladder is placed on a floor that has a sealant, which makes it hard to walk on but easy to sweep.... So I find that the physical condition of the building, specifically the loft that doesn't have access except through the use of a ladder and the ladder is placed on a floor that is of concrete or something that has a sealant that makes it easy to sweep and squeaky to shoes, combined with the use of it, which was people

were accessing it, or at least Ms. Walton tried to access it to clean it, created a dangerous condition of a public facility. I think in light of the standard of reviewing this case, the Court is going to find that there is a waiver of immunity as to Ms. Walton's claim.

**11.** Section 24–10–106(1) provides that:

A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may the type of action or the form of relief chosen by the claimant except as provided otherwise in this section. Sovereign immunity is waived by a public entity in an action for injuries resulting from: ... (c) A dangerous condition of any public building.

§ 24–10–106(1), (c), 7 C.R.S. (1998).

construction according to design specifications of city). "Maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility." § 24–10–103(1), 7 C.R.S. (1998).

Proof that the condition existed for a period of time, and the State through reasonable care should have discovered it, demonstrates that a "dangerous condition should have been known to exist." *See id.* However, a "dangerous condition shall not exist *solely* because the design of any facility is inadequate." *Id.* (emphasis added).

Each of the elements for waiver of immunity based on a dangerous condition of a public facility exists in connection with Walton's negligence cause of action. Through its safety officer and the classroom teacher, the university requested members of the public to engage in a use of the building connected with its maintenance, cleaning the loft, without providing a safe means for doing so. The State knew, or should have known, that asking students rather than its own employees to do the work, and furnishing only a portable extension ladder to access a high and otherwise inaccessible space, could result in one or more of them climbing the ladder without bracing it securely, that the ladder might slip on the floor, and that injuries could result from this dangerous combination of the floor, ladder, and loft.

Walton's injuries were not solely due to inadequate design of the building. There was no evidence presented to the trial court that the space between the two ceilings was designed to serve as a storage area. While the State was under no obligation to upgrade the design of the ceilings, use of the space by the university for storage required a means of maintenance and the institution of maintenance practices that did not pose an unreasonable risk of injury to members of the public.

Likewise, the activity exception to the waiver of immunity does not apply here. In *Jenks*, 826 P.2d at 826, a third party illegally discharged a firearm in a courthouse, killing his estranged wife and injuring another person. Obviously, the activity of the shooter was not within the building's purposes. We applied the statutory immunity bar because

[t]he undisputed facts fail to show that the physical condition of the courthouse was unsafe for public use on the day that Jenks was injured. The injury arose not from a dangerous physical condition or defect of the building, but from the intervening actions of a third party.

*Id.* at 830. In sharp contrast, for jurisdictional purposes, the trial court found that the negligent act or omission of the State—not a third party—caused the dangerous condition that resulted in Walton's injuries. *See, e.g., Hendricks ex rel. v. Weld County Sch. Dist.,* 895 P.2d 1120, 1123 (Colo.App.1995) (waiving immunity for student's injury attributable to an unpadded gymnasium wall, an integral part of an elementary physical education classroom).

Liability attaches for injury stemming from the public's use of a dangerous or defective physical condition of the building. The linchpin of our "use" inquiry under *Jenks* is that "the statute refers to an injury arising from the state of the building itself *or the use of a state of the building.*" See *Jenks,* 826 P.2d at 827 (emphasis added); *see also Hendricks,* 895 P.2d at 1123.

In *Jenks,* 826 P.2d at 829, we cited *Alexander v. State,* 756 S.W.2d 539, 542 (Mo.1988), in which the Missouri Supreme Court determined that a dangerous condition existed in connection with the plaintiff's fall off a ladder and onto a folding room divider placed at the foot of the ladder. Plaintiff was an outside repairman whom the state called upon to service an elevator in a state office building. In *Jenks,* we contrasted *Alexander* with *Kanagawa v. State,* 685 S.W.2d 831, 835 (Mo. 1985), which precluded governmental liability where the plaintiff's injury resulted from an intervening third party's criminal act.

The record supports the trial court's jurisdictional findings that the dangerous condition associated with Walton's use and injury was, in the words of the statute, "proximately caused by the negligent act or omission of the public entity in ... maintaining such facility." § 24–10–103(1), 7 C.R.S. (1998). Because the record supports those findings, we will not disturb them. *See People v. Schafer,* 946 P.2d 938, 946 (Colo.1997). We

agree with the trial court's conclusion of law that this suit is within the governmental immunity waiver of section 24–10–106(1)(c) and may proceed.

### III.

Accordingly, we reverse the judgment of the court of appeals and remand this case with directions to reinstate Walton's negligence action against the State.