Carol LUENBERGER on her own behalf and as parent, guardian, and next friend to Jonathan Jurenka, a minor, Plaintiffs–Appellants,

v.

The CITY OF GOLDEN, a municipal corporation, Defendant–Appellee.

No. 98CA2226.

Colorado Court of Appeals,
Div. V.

Oct. 28, 1999.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.

Pickard & Waters, P.C., Joe Pickard, Doris A. Waters, Denver, Colorado, for Plaintiffs–Appellants

Hall & Evans, L.L.C., David R. Brougham, Denver, Colorado, for Defendant–Appellee

Opinion by Judge DAVIDSON.

Plaintiffs, Carol Luenberger, individually and as parent, guardian, and next friend to Jonathan Jurenka, a minor, appeal from the trial court's dismissal of their complaint against defendant, the City of Golden. We vacate the judgment and remand with directions.

On June 24, 1996, Jurenka was injured when he fell from his bicycle while riding a half-pipe located in a park in the City. Plaintiffs subsequently brought this action seeking compensation from the City.

The City moved to dismiss plaintiffs' complaint pursuant to C.R.C.P. 12(b)(1) and C.R.C.P. 12(b)(5). The City argued that the trial court lacked subject matter jurisdiction because plaintiffs' claims were barred by the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.1999. The City argued that it had no notice of any similar type of accident involving the half-pipe. In support of this position, the City submitted an affidavit from the superintendent of parks who stated that, although the City had received complaints concerning the steel skin of the half-pipe, it had not received any reports of an accident similar to Jurenka's which involved the half-pipe.

Alternatively, the City argued that plaintiffs' claims should be dismissed because it

owed no duty of care to plaintiffs under the Colorado Recreational Area Liability Act (CRLA), § 33–41–101, et seq., C.R.S.1999, which provides limitations on liability concerning lands made available for recreational purposes without charge. The City asserted that plaintiffs' claims came within the CRLA because, as set forth in the affidavit from the superintendent of parks, it did not charge a fee for the use of the half-pipe.

In response, plaintiffs attached an affidavit from an expert on recreational and bicycle safety. The expert opined that the City should have known of the danger posed by the half-pipe and should have undertaken affirmative steps to minimize the danger. Plaintiffs stated, however, that any evidence regarding the City's actual knowledge of the danger posed by the half-pipe would be developed in discovery. Plaintiffs also argued that the CRLA did not apply because it was intended to protect only private, rural landowners, not public municipalities. Thus, plaintiffs claimed that the CRLA conflicted with the GIA's waiver of immunity under § 24–10–106(1)(e), C.R.S.1999, for a public facility located in a park or recreational area.

The trial court found that the CRLA applied to public entities, including municipalities. The court also found that the CRLA did not conflict with the GIA, noting that the waiver of immunity under the GIA was not inconsistent with the limitation of liability under the CRLA. Therefore, based on the liability limitations set forth in the CRLA, the court dismissed plaintiffs' claims against the City. Because it dismissed the complaint on those grounds, the court did not rule on the City's claim of immunity under the GIA.

On appeal, plaintiffs contend that the trial court erred in determining that the CRLA was applicable. In response, the City argues that the trial court properly applied the CRLA and, alternatively, that plaintiffs' claims are barred by the GIA. Because the issue whether the GIA bars plaintiffs' claims concerns whether we have subject matter jurisdiction to hear this action, we address that issue first.

## I.

■ Except in certain limited circumstances, the GIA bars any claim against a public entity that lies in tort or could lie in tort. *See* §§ 24–10–106 and 24–10–108, C.R.S.1999. As pertinent here, § 24–10–106(1)(e) provides that a public entity's sovereign immunity is waived in an action for injuries resulting from "[a] dangerous condition of any ... public facility located in any park or recreation area maintained by a public entity...."

The phrase "dangerous condition" is defined in § 24–10–103(1), C.R.S.1999, in pertinent part, as follows:

[A] physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. Maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility. For the purposes of this subsection (1), a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate....

■ To establish that a dangerous condition was present, the injured party must show: (1) that the injury occurred as a result of the physical condition of a public facility or the use thereof; (2) which constitutes an unreasonable risk to the health or safety of the public; (3) which is known to exist or should have been known to exist in the exercise of reasonable care; and (4) which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. *Wal-*

*ton v. State,* 968 P.2d 636 (Colo.1998); *Smith v. Town of Snowmass Village,* 919 P.2d 868 (Colo.App.1996).

As noted, whether a claim falls within one of the provisions for which immunity has been waived is an issue of subject matter jurisdiction to be determined by the trial court under C.R.C.P. 12(b)(1). *See Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). Under C.R.C.P. 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *See Capra v. Tucker,* 857 P.2d 1346 (Colo.App.1993).

The City claims that plaintiffs failed to establish that the half-pipe constituted an unreasonable risk to the health or safety of the public or that it had notice of the alleged dangerous condition. The City asserts that the affidavit from the superintendent of parks, stating that the City had not received any complaints concerning similar accidents on the half-pipe, was unrefuted and, thus, is dispositive of this issue. We disagree.

The mere fact that the City had not received prior notice of the precise harm that occurred here does not compel the conclusion that the City did not have either constructive or actual knowledge of the alleged dangerous condition of the half-pipe. *See Seder v. City of Fort Collins,* 987 P.2d 904 (1999); *see also Powder Mountain Painting v. Peregrine Joint Venture,* 899 P.2d 279 (Colo.App.1994).

Therefore, because an issue of fact concerning the City's actual or constructive knowledge of the dangerous condition remains, we conclude that we are unable to resolve this issue as a matter of law. In making this determination, we do not address whether other provisions of the GIA might also be applicable.

## II.

Because the trial court made no findings on the immunity issue, remand is required. If, on remand, the trial court determines that it has subject matter jurisdiction in this case, it will need to address defendant's primary argument raised on appeal—that the City owes no duty to plaintiffs under the terms of the CRLA. Specifically, it will need to determine the question whether that statute is applicable under the circumstances here.

As in the trial court, plaintiffs assert here that the park in which Jurenka was injured did not constitute a rural area. Hence, they contend, any limitation on liability otherwise provided by the CRLA is, as a matter of law, inapplicable. Because of the limited record here, we disagree with both parties that this question can be determined as a matter of law.

At the time Jurenka was injured, the declaration of purpose for the CRLA, provided as follows:

> The purpose of this article is to encourage owners of land *within rural areas* to make land and water areas available for recreational purposes by limiting their liability toward persons entering thereon for such purposes. (emphasis added)

Colo. Sess. Laws 1969, ch. 157 at 411 (now codified at § 33–41–101, C.R.S.1999).

This section was amended in 1997 and the phrase "within rural areas" was deleted. *See* Colo. Sess. Laws 1997, ch. 23 at 53. The obvious purpose of this amendment was to expand the scope of the CRLA to include land within urban areas.

In the version of the statute applicable here, however, the General Assembly did not define the phrase "within rural areas." Accordingly, under such circumstances, we look to the plain and ordinary meaning of the terms used. *See State v. Hartsough,* 790 P.2d 836 (Colo.1990).

The term "rural" is commonly defined as including:

> living in country areas; engaging in agricultural pursuits; of, relating to, or characteristic of people who live in the country; of, relating to, associated with, or typical of the country.

*Webster's Third New International Dictionary,* 1990 (1986); *see also Nopro Co. v. Town of Cherry Hills Village,* 180 Colo. 217, 225, 504 P.2d 344, 349 (1972) (a "rural atmosphere" includes "small farms and large residential tracts, where farm animals and poultry would be permitted, bridle and walking paths be provided, open space be preserved and noise and traffic congestion be eliminated. . . .").

Under this dictionary definition, defendant reasons, the type of land used for large recreational facilities, such as the park here, necessarily is "rural." However, as plaintiffs point out, the statute refers to "land *within* rural areas" rather than simply "rural lands." As such, it contemplates consideration of the character of the land surrounding the land at issue rather than, as defendant argues, just the character of the land itself. Thus, a parcel of land within an urban area, although exhibiting "rural" characteristics, might not fall within the statute. For example, Central Park in Manhattan, which arguably has "rural" characteristics, would not likely constitute "land within rural areas."

■ Accordingly, the fact that it is undisputed that the park here is located within the City of Golden is not itself dispositive. Although we do not disagree with plaintiffs that, more often than not, a city park will not be considered to be within a rural area, under the limited record here, we cannot make that determination as a matter of law.

Hence, on remand, the court must make the requisite findings both to determine this issue as well as to permit informed review. Also, to the extent that plaintiffs have argued that this action falls within one of the exceptions set forth in the CRLA, plaintiffs may raise this argument on remand, if appropriate.

The trial court's judgment is vacated, and the cause is remanded for further proceedings consistent with this opinion. Upon remand, because the issue whether the GIA bars plaintiffs' claims goes to the question of subject matter jurisdiction, the court should address this issue first before determining whether the CRLA is applicable.

Judge TAUBMAN and Judge KAPELKE concur.