COLORADO COURT OF APPEALS
2016COA140

Court of Appeals No. 15CA1572
City and County of Denver District Court No. 14CV33332
Honorable Elizabeth A. Starrs, Judge

Sean Dennis, as conservator and on behalf of
Doreen Heyboer,

Plaintiff-Appellant,

v.

City and County of Denver, Colorado,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE FREYRE
Taubman and Plank*, JJ., concur

Announced September 22, 2016

Bachus & Schanker, LLC, David Krivit, Scot C. Kreider, Denver, Colorado, for
Plaintiff-Appellant

Cristal Torres DeHerrera, Interim City Attorney, Wendy J. Shea, Assistant City
Attorney, Jamesy C. Owen, Assistant City Attorney, Denver, Colorado, for
Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    In this case, we address whether the defendant, the City and County of Denver,[1] waived its immunity for injuries Doreen Heyboer sustained as a passenger on a motorcycle that could not timely brake when a car unexpectedly turned left in front of it.  The answer depends on whether a deteriorated roadway is an "unreasonable risk to the health or safety of the public" under § 24-10-103(1.3) C.R.S. 2016 of Colorado's Governmental Immunity Act (CGIA), a precursor to establishing a "dangerous condition" under § 24-10-106(1)(d)(I), C.R.S. 2016.  This is a novel question.  Plaintiff Sean Dennis, as conservator and guardian for Heyboer, brought this negligence and premises liability action against the City.

¶ 2    The complaint alleged that the City had a duty to maintain the roadway free from dangerous conditions that physically interfered with the movement of traffic, that it breached this duty by allowing the roadway to fall into disrepair, that it knew of the deteriorated

---

[1] The complaint also named the motorcycle driver, Michael Veres, as a defendant, however, the allegations against Veres were settled before the hearing.  Heyboer also settled with the driver of the car without litigation.

1

state of the road from prior complaints, and that Heyboer's injuries resulted from the City's breach of its duty of care.

¶ 3 In response, the City moved to dismiss under C.R.C.P. 12(b)(1). It asserted immunity and denied Heyboer's allegations. The district court conducted a hearing under *Trinity Broadcasting of Denver, Inc., v. City of Westminster*, 848 P.2d 916 (Colo. 1993) and issued a judgment granting the City's motion. It concluded that the City was immune from suit because "[t]he Plaintiff produced *no evidence*, either through a witness or an exhibit, that this dangerous condition posed "an unreasonable risk to the health and safety of the public" as required by § 24-10-103(1.3)." (Emphasis added.) It further concluded that Heyboer failed to sustain her burden of proof.

¶ 4 We conclude that the court clearly erred in its factual finding that the record contained no evidence of an unreasonable risk to the health or safety of the public because the record contradicts that finding.[2] Indeed, both the record and the court's factual

---

[2] We note that Heyboer contends the court failed to make any "factual findings" in its written judgment. We disagree and construe the court's "Discussion" section of the judgment, which

2

findings show the City's knowledge of the road's poor conditions, the City's admission that road surface conditions raised a public safety risk, and the City's determination that the road was dangerous but not dangerous enough to fix. These facts demonstrate that the City failed to maintain the road as required under § 24-10-103(2.5), thereby creating an unreasonable risk to the health or safety of the public. In reaching this conclusion, we necessarily find that Heyboer satisfied her burden of proof.

¶ 5   We further conclude that because the record contains evidence of an unreasonable risk to the health or safety of the public, the court erred as a matter of law in finding no waiver of immunity under § 24-10-106(1)(d)(I). Accordingly, we reverse the court's judgment and remand the case for reinstatement of the complaint.

## I.   Court's Findings

¶ 6   The facts of the accident are not disputed. On September 20, 2013, while riding as a passenger on the back of a motorcycle driven by Veres, Heyboer was thrown from the motorcycle when Veres suddenly braked to avoid a collision. Veres was traveling

specifically details the hearing evidence and the facts the City conceded, as the court's factual findings.

3

eastbound on Mississippi Avenue, and as he neared the intersection with Broadway, a car suddenly turned left across traffic in front of him. He applied the brakes, but he was unable to avoid the accident and hit the right rear panel of the car. Heyboer suffered permanent brain injuries from the accident.

¶ 7    At the hearing, the City conceded knowledge of the road's deteriorated condition, conceded that Heyboer was injured at the intersection, and conceded that it had a duty to maintain the road at that intersection. However, it denied that the condition of the road posed an unreasonable risk to the health or safety of the public, a requisite showing under § 24-10-103(1.3), which defines "dangerous condition."

¶ 8    In its judgment, the court found that Veres examined the pavement after the crash and determined that it had played a role in his inability to stop. Veres described more than fifteen years of experience as a motorcycle driver and said he regularly maintained his motorcycle.

¶ 9    The court found Heyboer's accident reconstruction and vehicle dynamics expert, David Bilek, reliable, and he opined that the collision would not have occurred if the road surface had been

4

smooth, that the road's condition interfered with the movement of traffic, and that the road's uneven surface interfered with Veres' braking ability.

¶ 10 The court's judgment extensively recited the testimony of William Kennedy, the City's Pavement Engineer. Kennedy admitted that road surface condition was a factor in determining public safety risk, that the intersection where the accident occurred was well worn and in very poor condition, and that he was never fiscally constrained in repairing potholes.

¶ 11 Kennedy described a Pavement Condition Index (PCI) the City used to rate road conditions from excellent to very poor. Kennedy used this index to prioritize his repair work and said the PCI of this intersection was "very poor." He clarified that the PCI was not a measure of dangerousness, but he said that it provided an objective and rational basis for determining maintenance and repair needs and priorities. He admitted that this intersection was dangerous at the time of the accident but opined that it was not dangerous enough to fix. He said he had never found an intersection in Denver to be dangerous.

¶ 12    The court's judgment recited testimony from the City's two witnesses.  The officer who investigated the crash, Stephanie Linkus, did not find that the road conditions played a role in this accident.  Similarly, the City's accident reconstruction and mechanical engineering expert, Guy Barbera, opined that the road's surface did not interfere with braking and that the collision would still have occurred if the road conditions had been smooth.  No witness opined on whether the road condition posed an "unreasonable risk."

## II.    CGIA Jurisdiction

¶ 13    Governmental immunity is an issue of subject matter jurisdiction.  *City of Colorado Springs v. Powell*, 48 P.3d 561, 563 (Colo. 2002); *Springer v. City & Cty. of Denver*, 13 P.3d 794, 798 (Colo. 2000).  The General Assembly enacted the CGIA in response to three cases abrogating Colorado's common law of governmental immunity.  *Padilla in Interest of Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo. 2001) (listing cases and statutory response); § 24-10-102, C.R.S 2016.  The CGIA establishes governmental immunity from suit in tort actions, but it waives immunity under specific circumstances, including, as relevant here, when there

6

exists "[a] dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic." § 24-10-106(1)(d)(I).

¶ 14    The CGIA's purpose is twofold: (1) to protect the public from unlimited liability and excessive fiscal burdens; and (2) to allow the common law of negligence to operate against governmental entities, subject to the exceptions barring specific suits. *See State v. Moldovan*, 842 P.2d 220, 222 (Colo. 1992) (The purposes of CGIA include "permit[ting] a person to seek redress for personal injuries caused by a public entity."). Because the CGIA derogates Colorado's common law, we strictly construe the statute's immunity provisions. *Springer*, 13 P.3d at 798. Conversely, we broadly construe the CGIA's waiver provisions in favor of victims injured by the negligence of governmental agents. *Id.*; *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998).

A.    Standard of Review

¶ 15    If governmental immunity is raised before trial, "the issue is properly addressed pursuant to a C.R.C.P. 12(b)(1) motion to dismiss." *Corsentino v. Cordova*, 4 P.3d 1082, 1087 (Colo. 2000). Under C.R.C.P. 12(b)(1), the injured plaintiff bears the burden of

7

proving the court's subject matter jurisdiction under the CGIA and that immunity has been waived. *Tidwell ex rel. Tidwell v. City & Cty. of Denver*, 83 P.3d 75, 85 (Colo. 2003); *Powell*, 48 P.3d at 563. Any factual dispute upon which the existence of jurisdiction may turn is for the district court to resolve after weighing the evidence, finding facts, and entering conclusions of law. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384 (Colo. 1997); *see also Walton*, 968 P.2d at 641.

¶ 16    On review, we defer to the district court's factual findings unless they are clearly erroneous and unsupported by evidence in the record. *See Walton*, 968 P.2d at 645. A finding is clearly erroneous if there is no support for it in the record. *See Cont'l W. Ins. Co. v. Jim's Hardwood Floor Co.*, 12 P.3d 824, 828 (Colo. App. 2000), *as modified on denial of reh'g* (May 18, 2000).

¶ 17    Once questions of historical fact are resolved, the question of whether a governmental entity is entitled to immunity is one of law, which we review de novo. *Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶ 11, *aff'd*, 2015 CO 24; *Douglas v. City & Cty. of Denver*, 203 P.3d 615, 618 (Colo. App. 2008).

¶ 18    Similarly, the interpretation of statutory definitions is a question of law that we review de novo. *Douglas*, 203 P.3d at 618. Therefore, in reviewing a district court's determination of whether a dangerous condition exists under the CGIA, we review the court's findings of historical fact for clear error, deciding only whether there is any evidence in the record to support those findings. *Jordan*, ¶ 11. We review the court's ultimate legal conclusion de novo, applying principles of statutory interpretation. *Id.* at ¶ 13.

### B.    Burden of Proof in Establishing Immunity Waiver

¶ 19    Heyboer raises two issues on appeal. First, she contends the court factually erred in finding there was no evidence in the record of an "unreasonable risk" and that in doing so, it erred as a matter of law in refusing to find a waiver of immunity. Second, she contends that she satisfied her burden of proving an "unreasonable risk to the health or safety of the public" under the standard set forth in *Tidwell*. Because the parties dispute the appropriate standard that applies to the plaintiff's burden of proof in establishing a waiver of immunity, we address this issue first and then review the facts developed at the hearing and found by the court under that standard.

9

¶ 20    Relying on *Tidwell*, Heyboer contends that we should apply C.R.C.P. 12(b)(5) and the summary judgment standard of C.R.C.P. 56 because the court conducted a *Trinity* hearing and considered evidence outside the pleadings.  In contrast, the City contends that *Tidwell* does not apply because it involved a different section of the immunity statute (emergency vehicle exception) and because the court "inappropriately intermixed a summary judgment inquiry with the immunity inquiry."  Instead, the City asks us to apply the preponderance of the evidence standard and argues that Heyboer failed to prove, by a preponderance of the evidence, that her injuries resulted from the dangerous road conditions, rather than from the illegal actions of the car's driver.

¶ 21    In *Trinity*, the supreme court held that the issue of state immunity under the CGIA is a question of subject matter jurisdiction that must be determined according to C.R.C.P. 12(b)(1) and that the plaintiff bears the burden of proving jurisdiction. *Trinity Broad.*, 848 P.2d at 924-25.  The court further held that when jurisdictional facts are disputed, the district court should allow the parties latitude in discovering or introducing evidence at a

10

hearing tending to prove or disprove jurisdiction. *Id.* at 924. It did not, however, specify how a plaintiff could meet this burden.

¶ 22     The court in *Tidwell* addressed this unanswered question. It reaffirmed *Trinity*'s holding that C.R.C.P. 12(b)(1) governs the issue of immunity and that the plaintiff bears the burden of proof. It further concluded that because statutes granting immunity must be narrowly construed (and those waiving immunity must be broadly construed), the plaintiff should be afforded the reasonable inferences from his or her evidence. *Tidwell*, 83 P.3d at 85. It described this burden as "a relatively lenient one." *Id.* at 86.

¶ 23     Similar to this case, the facts related to jurisdiction in *Tidwell* were intertwined with the merits of the case (causation element), making the application of the standard more difficult for the district court. Citing the requirement that waiver of immunity be construed broadly, and applying inferences favorably to the plaintiff, the court concluded that a plaintiff need only prove a "minimal causal connection" between the injuries and the specified conduct to satisfy his or her burden. *Id.* Implicit in this finding is that proof of causation under the preponderance of the evidence standard is reserved for the trial on the merits. Accordingly, we reject the City's

11

argument that the preponderance standard applies in a *Trinity* hearing.

¶ 24    Following *Tidwell*, the court, in *Finnie v. Jefferson County School District R-1*, 79 P.3d 1253 (Colo. 2003), rejected the argument Heyboer makes here that Rule 12(b)(5) applies and requires a court to covert a motion to dismiss into a motion for summary judgment. *Id.* at 1259. It ruled that the text of § 24-10-108, C.R.S. 2016, requires courts to resolve jurisdictional issues before trial, and that "[b]ecause summary judgment procedures sometimes fail to definitely resolve issues of fact before trial, . . . summary judgment procedures pursuant to C.R.C.P. 12(b)(5) are inconsistent with the requirements" of the statute. *Id.* at 1258-59. The court therefore, expanded the *Trinity* hearing procedures under C.R.C.P. 12(b)(1) to include all issues of immunity, including facts not directly disputed by the parties. *Id.* at 1260; *see also Martinez v. Estate of Bleck*, 2016 CO 58, ¶ 27 ("trial courts must resolve all issues pertaining to sovereign immunity prior to trial, including factual issues, regardless of whether those issues pertain to jurisdiction"). It reaffirmed that although the plaintiff must prove jurisdiction, this burden is

12

"relatively lenient," and the plaintiff must be afforded the reasonable inferences from his or her evidence. *Finnie,* 79 P.3d at 1261. Therefore, we reject Heyboer's argument that the standards of C.R.C.P. 12(b)(5) and C.R.C.P. 56 should be applied in *Trinity* hearings.

¶ 25    In sum, we conclude that when a plaintiff sues a governmental entity and that entity moves to dismiss for lack of jurisdiction, the plaintiff has the burden of proving jurisdiction under C.R.C.P. 12(b)(1). The court may conduct a *Trinity* hearing at which the parties may present evidence related to all issues of immunity, including facts not in dispute. *Finnie,* 79 P.3d at 1260. After the hearing, the court must "weigh the evidence and decide the facts" to satisfy itself of its power to hear the case. *Trinity Broad.,* 848 P.2d at 925 (quoting *Boyle v. Governor's Veterans Outreach & Assistance Ctr.,* 925 F.2d 71, 74 (3d Cir. 1991)). In doing so, it must afford the plaintiff the reasonable inferences from his or her evidence. *Tidwell,* 83 P.3d at 86. This same lenient standard applies to facts related to both the jurisdictional issue and the merits of the case. *Id.*

¶ 26

## C. Unreasonable Risk

¶ 27    Heyboer contends that the district court erred in finding that she produced no evidence of an unreasonable risk and that the record demonstrates the City failed to maintain the road in its original condition, thereby creating an unreasonable risk to the public. Alternatively, she asks this court to remand for further factual development if necessary.

¶ 28    The City, relying on the absence of evidence of an unreasonable risk or an opinion of unreasonableness, contends that the court's order is supported by the record and that no evidence of an unreasonable risk exists. It further contends that the accident resulted from the other car's traffic violation rather than the road's surface condition, and asks us to affirm the court's dismissal. Thus, our resolution of the immunity question under § 24-10-106(1)(d)(I) requires us to interpret the meaning of "unreasonable risk to the health or safety of the public" in § 24-10-103(1.3).

¶ 29    As noted above, a public entity is generally "immune from liability in all claims for injury which lie in tort or could lie in tort." § 24-10-106(1). As relevant here, governmental immunity is

14

explicitly waived for "[a] dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic." § 24-10-106(1)(d)(I). The phrase "interferes with the movement of traffic" modifies "[a] dangerous condition" in that section. Thus, immunity is waived only when a dangerous condition both exists and interferes with the movement of traffic. *See Bloomer v. Bd. of Cty. Comm'rs*, 799 P.2d 942, 946 (Colo. 1990) (holding that "of a public highway, road, or street which physically interferes with the movement of traffic" "merely modifies" "dangerous condition"), *overruled on other grounds by Bertrand v. Bd. of Cty. Comm'rs*, 872 P.2d 223 (Colo. 1994)), *superseded by statute*, Ch. 262, sec. 1, § 24-10-103(2.7), 2007 Colo. Sess. Laws 1025.

¶ 30     To establish that a dangerous condition exists under § 24-10-103(1.3), an injured party must show that an injury resulted from (1) a physical condition of a public facility or the use thereof; (2) which constituted an unreasonable risk to the health or safety of the public; (3) which was known to exist or should have been known to exist in the exercise of reasonable care; and (4) which was proximately caused by the negligent act or omission of

15

the public entity in constructing or maintaining such facility.

*Medina v. State*, 35 P.3d 443, 454 (Colo. 2001); *Springer*, 13 P.3d at 799; *Walton*, 968 P.2d at 644.

¶ 31     This, in turn, requires us to define the phrase "unreasonable risk to the health or safety of the public," which is not defined in the CGIA.  Accordingly, we apply the rules of statutory interpretation to determine its meaning.  We must give effect to the General Assembly's intent, recognizing that provisions that waive immunity should be broadly construed.  *Tidwell*, 83 P.3d at 81.  We look first to the plain language of the statute and give words and phrases their ordinary meanings.  *Id.*  If the plain language of the statute demonstrates a clear legislative intent, we look no further in conducting our analysis.  *See Jones v. Cox*, 828 P.2d 218, 221 (Colo. 1992); *see also Springer*, 13 P.3d at 799.

¶ 32     The term "unreasonable," as it appears in the statute, is an adjective that modifies "risk."  Unreasonable means "[n]ot guided by reason; irrational or capricious."  Black's Law Dictionary 1772 (10th ed. 2014).  In the context of tort law, reasonableness is defined as acting in accordance with the duty of care owed to another. *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 266 P.3d 412, 417 (Colo.

16

App. 2011); *see also* CJI-Civ. 4th 9:8 (2016) ("Reasonable care is that degree of care which a reasonably careful person would use under the same or similar circumstances.").  Thus, unreasonableness is the failure to act reasonably with regard to a particular risk or duty of care.

¶ 33     To determine what constitutes an unreasonable risk, we must identify what constitutes a risk.  "Risk" is defined as "the existence and extent of the possibility of harm" or "the chance of injury, damage, or loss."  Black's Law Dictionary 1524 (10th ed. 2014).  Section 24-10-103(1.3) narrows the class of applicable risks to those "known to exist" and those caused by the failure to "construct[] or maintain[] [a] facility."  A risk that exists only because "the design of any facility is inadequate" is explicitly excluded.  *Id.*

¶ 34     The statute defines "maintenance" as "the act or omission of a public entity . . . in keeping a facility in the same general state of repair or efficiency as initially constructed or in preserving a facility from decline or failure."  § 24-10-103(2.5).  Thus, "maintain" means a duty to restore a facility to the "same general state of being, repair, or efficiency as initially constructed."  *Swieckowski,* 934

17

P.2d at 1385; *see Martinez v. Weld Cty. Sch. Dist. RE-1*, 60 P.3d 736, 739 (Colo. App. 2002) (school liable for failure to maintain sidewalks free from ice and snow); *see also Moldovan*, 842 P.2d at 224-25 (government liable for failure to repair damaged fence that allowed cow to enter roadway); *Wheeler in Interest of Wheeler v. Cty. of Eagle*, 666 P.2d 559, 561 (Colo. 1983) (government liable for failure to clear trees and bushes that had obstructed road); *Stephen v. City & Cty. of Denver*, 659 P.2d 666, 668 (Colo. 1983) (government liable for failure to repair stop sign that had been turned to face wrong direction); *Hallam v. City of Colorado Springs*, 914 P.2d 479, 482-83 (Colo. App. 1995) (government liable for failure to replace barriers that someone had removed); *Schlitters v. State*, 787 P.2d 656, 657-58 (Colo. App. 1989) (government liable for failure to secure loose boulders above road).

¶ 35    The duty to maintain, however, "does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility." § 24-10-103(2.5); *Walton*, 968 P.2d at 645; *see also Estate of Grant v. State*, 181 P.3d 1202, 1206-07 (Colo. App. 2008) (government not liable for failure of design on temporary road to provide for median barrier); *Lyons v. City of Aurora*, 987 P.2d 900,

903 (Colo. App. 1999) (government not liable for failure of traffic signal design to provide sufficient time for pedestrians to cross intersection); *Karr v. City & Cty. of Denver*, 677 P.2d 1384,1385 (Colo. App. 1984) (holding that an increase in vehicle-pedestrian accidents, after an increase in pedestrian traffic where the City had not installed a stoplight at an intersection, was not a dangerous condition because the public entity was not required to improve the intersection based upon its changed use).

¶ 36    The failure to keep a road in the same general state of repair or efficiency as it was initially constructed, therefore, constitutes an unreasonable risk because it could "increase the risk of injury above that deemed to be acceptable during the design stage." *Medina*, 35 P.3d at 448-49, 457.  As our supreme court has explained, the reasoning behind a waiver of immunity in this context is "not because [the City] necessarily causes a dangerous condition, but because it is in a position to discover and correct the condition." *Springer*, 13 P.3d at 801.  Accordingly, reading the plain language of the immunity statute and interpreting it broadly as we must, we conclude that a plaintiff satisfies his or her burden of proving an "unreasonable risk to the health or safety of the public"

under § 24-10-103(1.3) when he or she shows that a governmental entity failed to restore a damaged road to its "same state of efficiency or repair as initially constructed." This showing alone, however, is insufficient to establish jurisdiction. A plaintiff must still prove that the governmental entity knew of the condition, that the road is a public facility, and that the road's condition interfered with the movement of traffic. *Springer,* 13 P.3d at 799; *see also* § 24-10-106(1)(d)(I).

## D. Application

¶ 37 We reject the City's argument and the district court's conclusion that Heyboer presented *no* evidence of an unreasonable risk. The City conceded that the road's surface condition was a factor in determining the safety risk to the public, that the road was in poor condition, and that it knew of the road's deteriorated condition. Moreover, the City failed to produce any evidence of repairs (beyond pothole repairs not at issue here) that it had conducted to restore the road's uneven surface to "its same general state of repair or efficiency as initially constructed" and instead admitted, through its City Engineer, that the road was dangerous, but not dangerous enough to fix. Indeed, photographs taken after

20

the accident and relied on by the expert witnesses show the deteriorated state of the road and its uneven surface.

¶ 38    Additionally, though not recited in the court's judgment, the hearing evidence included:

- Veres' testimony that numerous ruts and cracks caused his motorcycle to "skip" and lose contact with the ground;

- Bilek's statement that the non-uniformity of the tire marks led him to conclude that the motorcycle's tires were not in full contact with the pavement when Veres applied the brakes, thereby impacting Veres' ability to decelerate and handle the motorcycle;

- Kennedy's description of numerous 311[3] calls concerning the condition of this intersection in the months before the accident and citizens' reports that the road was cracked, worn, rutted, and potholed; and

- Barbera's opinion that the last eleven feet of the road before the motorcycle struck the car created "some

---

[3] 311 is a citizen hotline used to report road conditions to the City.

21

influence" in the accident, and that for at least fifty percent of this distance, the motorcycle's rear tire was not in contact with the road.

¶ 39 Accordingly, we conclude that Heyboer presented competent evidence of the City's failure to maintain the road in the same state of repair or efficiency as initially constructed under § 24-10-103(2.5) and that this failure established an unreasonable risk to the health or safety of the public under § 24-10-103(1.3). Thus, we conclude that Heyboer established the existence of a "dangerous condition."

¶ 40 Because the court's factual findings demonstrate that the road conditions physically interfered with the movement of traffic on a road designed for public travel, and because that finding is not contested on appeal, we further conclude that Heyboer established that the road constituted a "dangerous condition" for purposes of waiving the City's immunity under §24-10-106(1)(d)(I) of the CGIA. Thus, the court erred as a matter of law in finding no waiver of immunity. Whether the road's conditions, the car's traffic violations, or a combination of these factors caused the accident are questions to be determined on remand. Accordingly, we reverse the

22

court's order granting the City's motion to dismiss and conclude that Heyboer established a waiver of immunity under the CGIA.

### III.    III.    Conclusion

¶ 41      We reverse the district court's judgment granting the City's motion to dismiss and remand the case for reinstatement of Heyboer's complaint.

JUDGE TAUBMAN and JUDGE PLANK concur.