Rebecca LYONS, Plaintiff–Appellant,

v.

CITY OF AURORA, a Colorado Municipality, Defendant–Appellee.

No. 98CA0539.

Colorado Court of Appeals, Div. A.

April 1, 1999.

Rehearing Denied May 13, 1999.*

Certiorari Denied Oct. 18, 1999.

Robert W. Turner, LLC, Robert W. Turner, Denver, Colorado, for Plaintiff–Appellant.

Office of the City Attorney, Charles H. Richardson, Julia A. Bannon, Peter Ruben Morales, Aurora, Colorado, for Defendant–Appellee.

Opinion by Chief Judge HUME.

In this personal injury action, plaintiff, Rebecca Lyons, appeals from the trial court's dismissal of her complaint against defendant, the City of Aurora. We affirm.

Plaintiff brought this action seeking compensation for injuries she sustained when she was struck by a car while crossing an intersection in the City of Aurora. Plaintiff alleged that the City's improper maintenance of traffic and pedestrian signals at the intersection created a dangerous condition which physically interfered with the movement of traffic on the roadway.

The City moved to dismiss plaintiff's complaint or, alternatively, for summary judgment on the basis that plaintiff's claims were barred by the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S. 1998. As pertinent here, the City argued that pursuant to § 24–10–106(1)(d)(I), C.R.S. 1998, a public entity's immunity was not waived for dangerous conditions caused by traffic signs, signals, or markings.

In response, plaintiff argued that the pedestrian signal was either malfunctioning or had been improperly maintained or set by the City. Plaintiff claimed that the traffic signals did not provide sufficient time for a

pedestrian to cross six lanes of traffic before the opposing traffic received a green light.

The trial court granted the City's motion, concluding that the City's immunity was not waived under § 24–10–106(1)(d)(I) for a dangerous condition of a public highway, road, or street. The court also found that the City's immunity was not waived under § 24–10–106(1)(d)(II), C.R.S.1998, based on the failure to repair a traffic control signal on which conflicting directions were displayed.

■ On appeal, plaintiff contends that the trial court erred in determining that the City's immunity was not waived under § 24–10–106(1)(d), C.R.S.1998. In particular, plaintiff argues that the failure of the traffic control signals to provide sufficient time for her to cross the intersection constituted a display of conflicting directions for purposes of § 24–10–106(1)(d)(II). We are not persuaded.

■ A motion to dismiss under the GIA involves the trial court's subject matter jurisdiction to hear an action and is properly resolved pursuant to C.R.C.P. 12(b)(1). *See Walton v. State*, 968 P.2d 636 (Colo.1998).

■ Under C.R.C.P. 12(b)(1), the trial court is the fact finder and may hold an evidentiary hearing to resolve any factual dispute upon which the existence of its subject matter jurisdiction under the GIA may turn. *See Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995).

■ The trial court's resolution of any disputed facts with regard to its jurisdiction under the GIA is reviewed under a clearly erroneous standard. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993).

Section 24–10–106(1)(d)(I) provides that a public entity's immunity from suit is waived in an action for injuries resulting from a "dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion" of such highway, road, or street. The phrase "physically interferes with the movement of traffic" is further defined in this subsection as not including "traffic signs, signals, or markings or the lack thereof...."

However, additional language in § 24–10–106(1)(d)(II) operates to extend a waiver of immunity to those limited circumstances when the dangerous condition results from the public entity's failure "to repair a traffic control signal on which conflicting directions are displayed...."

The definition of "dangerous condition" provides that a "dangerous condition shall not exist solely because the design of any facility is inadequate." Section 24–10–103(1), C.R.S.1998. The supreme court has held that this language does not distinguish between designs that are inadequate initially and those which become inadequate over time. *See Willer v. City of Thornton*, 817 P.2d 514, 518 (Colo.1991) (rejecting construction of phrase that would bar only "inadequate," not "negligent" designs; the plaintiff had argued that a roadway may be deemed "inadequate" if it proves insufficient to support the volume of traffic using the roadway); *see also Karr v. City & County of Denver*, 677 P.2d 1384 (Colo.App.1984) (court held that increase in pedestrian-vehicle accidents at intersection did not constitute a dangerous condition, noting that the public entity was not required to modify or improve intersection based on changing use).

The definition of "dangerous condition" also provides that "maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility." As was noted in *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo. 1997), the intent of this language is to preclude liability when a governmental entity fails to modify a facility because of changing safety standards or use.

Here, in support of its motion to dismiss, the City noted that plaintiff stated in her notice of claim that the "timing of the cross walk lights and stop signals at the intersection ... were not set as to allow a pedestrian sufficient time to cross the intersection...." In addition, the City submitted an affidavit from its traffic engineer who averred that a review of citizen complaints, annual inspections, and his own inspection of the pedestrian signal approximately six months after the accident showed that the signal was operat-

ing with the same 30–second interval design that was set in 1993.

The City also submitted an affidavit from the police officer who had investigated the accident in which he stated that he had checked the pedestrian signals shortly after the accident and had determined that they were operating properly. In addition, the City included a portion of the Manual on Uniform Traffic Control Devices concerning the timing of pedestrian signals.

In opposition to the City's motion, plaintiff submitted a video prepared by an expert she had retained that apparently showed that the pedestrian signal was not operating appropriately when he inspected it. However, a copy of this video was not included in the record on appeal. In an accompanying affidavit, this expert opined that the pedestrian signal was either improperly maintained or improperly set because it "did not permit sufficient time for a pedestrian to cross the six lanes of traffic prior to westbound traffic obtaining a green signal light."

After reviewing these materials, the trial court determined that plaintiff's complaint was based on the City's alleged failure to set the pedestrian signal so that a pedestrian would have sufficient time to cross the intersection before the opposing traffic received a green light. The court specifically found that such failure did not result in the display of conflicting directions for which the City's immunity was waived under § 24–10–106(1)(d)(II).

In interpreting the GIA, our goal is to give effect to the intent of the General Assembly. *City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996). That intent is determined primarily from an examination of the statutory language in accordance with the plain and ordinary meaning of the terms used. *Fogg v. Macaluso, supra.* In the construction of a waiver provision of the GIA, strained or forced interpretation of a statutory term should not be adopted. *State v. Hartsough,* 790 P.2d 836 (Colo.1990).

As noted, § 24–10–106(1)(d)(I) specifically precludes a waiver of immunity for a dangerous condition caused by "traffic signs, signals, or markings, or the lack thereof." Thus, in light of this language, we conclude that the court did not err in determining that the City's immunity was not waived under § 24–10–106(1)(d)(I) for a dangerous condition of a public highway, road, or street.

We also conclude that the trial court did not err in determining that the City's immunity was not waived under § 24–10–106(1)(d)(II) for the failure to repair a traffic control signal on which conflicting directions were displayed.

The term "conflicting" is not defined in the GIA. However, it is commonly defined as "being in conflict, collision, opposition." *Webster's Third New International Dictionary* 477 (1986). The common meaning of "conflict" as a verb is "to show variance, incompatibility, irreconcilability, or opposition." *Webster's Third New International Dictionary* 477 (1986).

As previously noted, plaintiff's contention was based on the failure of the pedestrian signal to provide sufficient time for her to cross the intersection before the cross traffic received a green light. No evidence established that the signal for the cross traffic was green at the same time the pedestrian signal indicated that it was permissible for plaintiff to cross the intersection.

Therefore, in the absence of any evidence showing that the traffic signals were in fact simultaneously showing conflicting directions, we conclude that the trial court did not err in finding that the City's immunity was not waived under § 24–10–106(1)(d)(II). Accordingly, we reject plaintiff's contention that the mere failure of the traffic signals to provide sufficient time for a pedestrian to cross an intersection involves the display of "conflicting directions" for purposes of § 24–10–106(1)(d)(II).

Hence, because the trial court's findings are supported by the record, we will not disturb them on review. *See Walton v. State, supra.*

The judgment is affirmed.

Judge MARQUEZ and Judge PIERCE** concur.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.