**William DeFORREST, individually and as executor and/or personal representative of the Estate of Julie DeForrest, Plaintiff–Appellee,**

v.

**CITY OF CHERRY HILLS VILLAGE, City of Greenwood Village, and Officer Glenn Bailey, Jr., Defendants–Appellants.**

**No. 98CA0347.**

Colorado Court of Appeals,
Div. V.

July 22, 1999.

Certiorari Denied Jan. 18, 2000.

Reinhart, Boerner, Van Deuren, Norris & Rieselbach, P.C., Otto K. Hilbert, II, Megan P. Rundlet, Denver, Colorado, for Plaintiff–Appellee.

Halaby Cross & Schluter, Theodore S. Halaby, Leslie L. Schluter, Denver, Colorado, for Defendants–Appellants.

Ankele, Icenogle, Norton & Seter, P.C., Erin M. Smith, Greenwood Village, Colorado, co-counsel for Defendant–Appellant City of Cherry Hills Village.

Opinion by Judge TAUBMAN.

Defendants, the City of Cherry Hills Village, City of Greenwood Village, and Glenn

Bailey, Jr., a police officer for Cherry Hills Village, appeal a trial court's denial of their motion to dismiss the claims brought against them by plaintiff, William DeForrest, individually, and as executor and personal representative of the Estate of Julie DeForrest. We affirm.

On October 6, 1995, the deceased was involved in a traffic accident at the intersection of Belleview and South Holly Street. Belleview is an east-west state highway which forms the border between Cherry Hills Village and Greenwood Village, and Holly is a north-south street that traverses both towns.

Prior to the accident, a power failure had rendered the traffic signals at the intersection inoperable. In response, employees from the Greenwood Village Public Works placed six portable stop signs at the intersection to control traffic.

Subsequently, Officer Bailey went to the intersection and found that the signal lights were functioning normally. He then proceeded to remove the portable stop signs starting with two signs controlling the westbound traffic on Belleview. He then removed the single sign controlling southbound traffic on South Holly Street. Before he could remove the remaining signs, a vehicle travelling northbound on South Holly Street entered the intersection and collided with the deceased, who was travelling westbound on Belleview.

As she had approached the intersection, the driver of the northbound vehicle had encountered both a red traffic light and a temporary stop sign at the intersection. After stopping, the driver entered the intersection, and her car collided with the deceased's vehicle. The deceased had a green light and no temporary stop sign as she proceeded through the intersection.

As a result of this accident, plaintiff brought this action against defendants, the State of Colorado, and the manufacturer of her car. As pertinent here, plaintiff alleged that together the stop signs and signal lights resulted in the display of conflicting directions such that the public entity defendants' immunity had been waived under § 24–10–106(1)(d), C.R.S.1998, of the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.1998.

The State of Colorado then moved to dismiss plaintiff's complaint against it on the basis that its immunity under the GIA had not been waived. After an evidentiary hearing on the State's motion, the court by bench ruling found that plaintiff had established through the testimony of its expert that the State's immunity had been waived based on its failure to establish procedures applicable to state highways for local governments to maintain traffic signals when there was a power outage. Accordingly, the court denied the State's motion to dismiss. In a subsequent written order, the court confirmed that decision.

In January 1997, Greenwood Village filed a motion for summary judgment asserting that it had sovereign immunity under the GIA. The trial court, through a different judge, denied Greenwood Village's motion. The court found that Greenwood Village had appeared at the evidentiary hearing on the State's motion and that it had had a full and fair opportunity to present evidence and argue the sovereign immunity issue. The court further found that the legal determination made by the prior judge was well-founded and that it was applicable to Greenwood Village. Citing the law of the case doctrine, the court applied that ruling to Greenwood Village and denied its motion to dismiss.

Approximately one year later, after conducting extended discovery, Greenwood Village renewed its motion for summary judgment, again seeking dismissal on the basis of sovereign immunity. Greenwood Village argued that the trial court had misapplied the doctrine of the law of the case in ruling on its prior motion for summary judgment. It noted that the factual basis for the waiver of sovereign immunity asserted by it was different from that asserted by the State. In addition, both Cherry Hills Village and Officer Bailey filed motions for summary judg-

ment arguing that their sovereign immunity under the GIA had not been waived.

In ruling on Greenwood Village's motion, the trial court noted that, because it had found that the law of the case doctrine was applicable to Greenwood Village's prior motion to dismiss, it would not revisit that issue with regard to its present motion. As to Cherry Hills Village, the court again found that its ruling on the State's motion to dismiss constituted the law of the case, and thus, it denied Cherry Hills Village's motion.

The court then found that the issues surrounding whether Officer Bailey was immune under the GIA were closer. Nevertheless, the court determined that factual issues were present with regard to whether he had created a dangerous condition. Accordingly, it also denied his motion to dismiss. Defendants then jointly brought this appeal.

## I. Timeliness of Appeal

■ Initially, we reject plaintiff's contention that Greenwood Village's appeal from its subsequent motion seeking dismissal based on sovereign immunity is untimely.

In *Walton v. State*, 968 P.2d 636 (Colo. 1998), the supreme court determined that an appeal from an order denying a motion to dismiss based on sovereign immunity is permissive, not mandatory. Thus, the court concluded that it had jurisdiction over a timely appeal from a second motion to dismiss under the GIA.

As Greenwood Village properly notes, both in *Walton* and here, there were two pretrial motions (to dismiss or for summary judgment) on the GIA issues, and in *Walton*, the court held that it could consider the second motion.

Here, plaintiff contends that, because the *Walton* court allowed an interlocutory appeal of the order ruling on the second motion to dismiss after an evidentiary hearing, whereas here there was no evidentiary hearing, that case is distinguishable. Nevertheless, here there was a renewed summary judgment mo-

tion filed by Greenwood Village after the completion of discovery. That motion contained additional information relating to the jurisdictional issues which had not been presented in the original summary judgment filed by Greenwood Village.

Based upon *Walton*, we conclude that, even when there is no evidentiary hearing, an interlocutory appeal should be permitted in a GIA case after a renewed motion for summary judgment is filed after the completion of discovery concerning jurisdictional issues. As the *Walton* court stated: "Factual development of the case through discovery in the course of trial preparation may aid a more informed jurisdictional determination at a later stage of pre-trial proceedings." *Walton v. State, supra*, 968 P.2d at 641.

Accordingly, we conclude that we have jurisdiction to consider Greenwood Village's appeal from the February 1998 order.

## II. Immunity Under GIA

Greenwood Village and Cherry Hills Village both contend that the trial court erred in determining that the order regarding the State's motion to dismiss constituted the law of the case as to their motions. All defendants then argue that the trial court erred in determining that their immunity was waived under the GIA. Although we agree that the trial court incorrectly applied the law of the case doctrine, we nevertheless conclude that the court did not err in denying defendants' motions to dismiss.

### A. Law of the Case

■ The doctrine of the law of the case is a discretionary rule of practice which directs that prior relevant rulings made in the same case generally are to be followed. It applies to decisions of law, rather than to the resolution of factual questions, and discourages reconsideration only of the ruling itself, not of a court's preliminary opinion on questions of fact or law related to the ruling. *Governor's Ranch Professional Center, Ltd. v. Mercy of Colorado, Inc.*, 793 P.2d 648 (Colo.App.1990).

■ Here, the record reflects that defendants, although represented by counsel at the hearing on the State's motion to dismiss, did not participate in that hearing. In addition, determination of whether defendants' immunity had been waived under the GIA involved resolution of the differing grounds upon which plaintiff sought to impose liability on defendants. Thus, although the trial court appropriately could have given preclusive effect to its order on a subsequent motion to dismiss by the State, because the underlying factual and legal issues are different as to each defendant, we conclude that it was inappropriate for the court to apply the law of the case doctrine in resolving their respective motions.

■ However, sovereign immunity involves an issue of subject matter jurisdiction. *See Fogg v. Macaluso*, 892 P.2d 271 (Colo. 1995). Thus, since all of the relevant evidence has been presented and the pertinent facts are not disputed, we may determine whether the trial court properly found that defendants' immunity had been waived under the GIA. *See Johnson v. Regional Transportation District*, 916 P.2d 619 (Colo.App.1995).

### B. Waiver of Immunity under § 24–10–106(1)(d)(II)

Section 24–10–106(1)(d)(I), C.R.S.1998, provides that a public entity's immunity from suit is waived in an action for injuries resulting from a "dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion" of such highway, road, or street. The term "dangerous condition" is defined in the GIA, in pertinent part, as follows:

> [A] physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. Mainte-

nance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility.... A dangerous condition shall not exist solely because the design of any facility is inadequate....

Section 24–10–103(1), C.R.S.1998.

The phrase "physically interferes with the movement of traffic" is defined in § 24–10–106(1)(d)(I) as not including "traffic signs, signals, or markings or the lack thereof...." However, sovereign immunity is waived under § 24–10–106(1)(d)(II), C.R.S.1998, when the dangerous condition results from the public entity's failure "to repair a traffic control signal on which conflicting directions are displayed ...." (emphasis added)

The phrase "conflicting directions" is not defined in the GIA. However, in *Lyons v. City of Aurora*, 987 P.2d 900, 903 (Colo.App. 1999), a division of this court recently noted that the term "conflicting" is commonly defined as "being in conflict, collision, opposition." The court also noted that the common meaning of the term "conflict" is "to show variance, incompatibility, irreconcilability, or opposition." *Lyons v. City of Aurora, supra*, 987 P.2d at 903.

#### i. Greenwood Village

■ Greenwood Village contends that its immunity was not waived under § 24–10–106(1)(d)(II), because it did not fail to repair a traffic control signal on which conflicting directions were displayed. Greenwood Village argues that its only involvement was the placement of temporary stop signs when the traffic lights were not operational. Thus, it asserts that at the time it placed the signs, no conflicting directions were displayed.

Greenwood Village further argues that conflicting directions were not displayed at the time of the accident. It contends that a conflict between a temporary stop sign and a traffic light does not constitute "a traffic control signal on which conflicting directions are displayed" for purposes of § 24–10–106(1)(d)(I). (emphasis added)

The term "traffic control signal" is not defined in the GIA. Greenwood Village, however, relying on the definition of "highway traffic signal" in the Manual on Uniform Traffic Control Devices, argues that the phrase refers only to power-operated traffic control devices. Thus, it claims that sovereign immunity is waived under § 24–10–106(1)(d)(II) only if "conflicting directions" are displayed on a "single, power-operated device."

One flaw in Greenwood Village's argument is that the General Assembly did not adopt the term "highway traffic signal" used in the Manual on Uniform Traffic Control Devices. There is no indication that the term that was used, "traffic control signal," applies only to a power-operated device.

Another flaw in Greenwood Village's construction of § 24–10–106(1)(d)(II) is that it would be exceedingly rare if not impossible for a single traffic light to display conflicting directions. Under such an interpretation, for example, a governmental entity would be immune when traffic signals controlling cross traffic both displayed green signals. However, we conclude that the General Assembly did not intend such an absurd result. *See* § 2–4–201(1)(c), C.R.S.1998 (General Assembly presumed to intend a "just and reasonable result").

Further, because the singular includes the plural, *see* § 2–4–102, C.R.S., the waiver of immunity applies to a public entity's failure to repair traffic control *signals* on which conflicting directions are displayed.

Here, the temporary stop signs erected by Greenwood Village essentially directed a motorist to stop and then go. In contrast, a motorist facing a red traffic light would not stop and then go but would be required to wait until the signal turned green. In addition, a motorist facing an operating traffic light and a temporary stop sign might reasonably assume that the temporary stop sign controlled over the direction displayed on the traffic light. Thus, under such circumstances, we conclude that the temporary stop sign would conflict with the traffic light, cre-

ating a display of conflicting signals for purposes of § 24–10–106(1)(d)(II).

Therefore, based on the foregoing analysis, we agree with the trial court's conclusion that Greenwood Village's immunity would be waived under § 24–10–106(1)(d)(II). Hence, albeit for different reasons, we conclude that it did not err in denying Greenwood Village's motion to dismiss. *See Cole v. Hotz*, 758 P.2d 679 (Colo.App.1987) (reviewing court may affirm when trial court reaches right result for incorrect reason).

#### ii. Cherry Hills Village

 Cherry Hills Village similarly contends that the trial court erred in determining that its immunity had not been waived under § 24–10–106(1)(d)(II). In particular, it argues that Officer Bailey's removal of the temporary stop signs or his failure manually to override the traffic signals prior to removing the stop signs did not result in the display of conflicting signals for purposes of § 24–10–106(1)(d)(II). However, Officer Bailey's actions in removing some of the stop signs created a situation in which motorists in opposing traffic lanes were controlled by different types of signals. As such, we conclude that his actions contributed to the display of "conflicting directions" for purposes of § 24–10–106(1)(d)(II). Therefore, based on the analysis set forth in the previous section, we conclude that the trial court did not err in denying Cherry Hills Village's motion to dismiss.

#### iii. Officer Bailey

We also reject Officer Bailey's contention that he was entitled to immunity under § 24–10–118(2), C.R.S.1998.

Section 24–10–118(2) provides, in pertinent part, that a public employee does not have immunity in "an action for injuries resulting from the conditions specified in section 24–10–106(1)." Therefore, in light of our determination that the trial court did not err in finding that both Greenwood Village's and Cherry Hills Village's immunity was waived

under § 24–10–106(1)(d)(II), we conclude that the trial court did not err in denying Officer Bailey's motion to dismiss. As such, we need not address his contention that the trial court erred in failing to find that he had not engaged in willful and wanton conduct. In summary, we conclude that the trial court did not err in denying the motions to dismiss filed by defendants.

The order is affirmed.

Judge ROY and Judge PIERCE * concur.