**Eileen Marie MOORE, Plaintiff–Appellant,**

v.

**The CITY AND COUNTY OF DENVER, Defendant–Appellee.**

**No. 00CA2123.**

Colorado Court of Appeals,
Div. II.

Jan. 17, 2002.

Schuetze & Gordon, LLP, Robert A. Schuetze, Christopher T. Macaulay, Boulder, CO, for Plaintiff–Appellant.

J. Wallace Wortham, Jr., City Attorney, Efrain M. Padro, Assistant City Attorney, Denver, CO, for Defendant–Appellee.

Opinion by Judge ROY.

Plaintiff, Eileen Marie Moore, appeals the judgment dismissing her complaint against the City and County of Denver. We affirm.

Plaintiff was injured when she was struck by a car that was southbound on a one-way street she was crossing from west to east as a pedestrian in a crosswalk. The crosswalk was located immediately north of a "T" intersection of the southbound one-way street with a two-way street approaching it from the southwest.

The eastbound crosswalk was controlled by a properly functioning pedestrian signal. However, one of the traffic signals controlling the southbound vehicular traffic and mounted on a post on the east side of the street had been turned ninety degrees so that it was facing northeast bound traffic and pedestrians. As a consequence, green traffic lights were simultaneously displayed for both the southbound and northeast bound vehicular traffic. The evidence is that the traffic and pedestrian signals were operating properly before and after the accident.

Plaintiff brought suit against the City and the driver of the car that struck her. Plaintiff's claim against the City was predicated on the misalignment of, and conflict in, the traffic and pedestrian control devices at the intersection.

On the City's motion, the trial court dismissed plaintiff's claim for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101,

et seq., C.R.S.2001, because the claim did not fall within any of the GIA's waiver provisions. The trial court thus rejected plaintiff's argument that the City's immunity was waived under § 24–10–106(1)(d)(II), C.R.S. 2001, which concerns actions for injuries resulting from dangerous conditions created by conflicting directions displayed on traffic signals.

The trial court found that the signals did not display conflicting directions *for pedestrians* within the meaning of § 24–10–106(1)(d)(II) because at the relevant time the pedestrian signal was probably functioning properly and indicated that the pedestrian should not cross the street. The trial court also concluded that pedestrians are required to obey the pedestrian signal, not the traffic signal, when both are present at an intersection. The court noted that apparent conflicts between pedestrian and traffic signals are common in downtown Denver. Accordingly, the court granted the City's motion to dismiss, and following the trial court's certification of its order as final pursuant to C.R.C.P. 54(b), plaintiff brought this appeal.

Plaintiff contends that the trial court erred in determining that the traffic signals controlling the intersection did not display "conflicting directions" within the meaning of § 24–10–106(1)(d)(II). We disagree.

■ Whether a claim falls within one of the provisions waiving a public entity's sovereign immunity is a question of subject matter jurisdiction to be determined by the trial court as fact finder pursuant to C.R.C.P. 12(b)(1). *Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). However, if all relevant evidence has been presented to the trial court, and the trial court need not resolve disputed issues of fact, the question of waiver under the GIA is one of law. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo.1997).

■ The starting point for determining whether and to what extent a statutory exception to governmental immunity may be applicable is the statutory text itself, followed by an analysis of the particular governmental function out of which the claimed injury arose and a consideration of where and how

the injury occurred. *Smith v. Town of Estes Park*, 944 P.2d 571 (Colo.App.1996).

Section 24–10–106(1)(d)(II) provides, in pertinent part, that a public entity's immunity from liability for all injury claims that lie in tort or could lie in tort is waived for injuries resulting from "[a] dangerous condition caused by ... the failure to repair a traffic control signal on which conflicting directions are displayed." The term "conflicting directions" is not defined in the GIA. However, in *Lyons v. City of Aurora*, 987 P.2d 900, 903 (Colo.App.1999), a division of this court noted that the term "conflicting" is commonly defined as "being in conflict, collision, opposition." The division also noted that the common meaning of the word "conflict" is "to show variance, incompatibility, irreconcilability, or opposition." *Lyons v. City of Aurora, supra*, 987 P.2d at 903 (quoting *Webster's Third New International Dictionary* 477 (1986)).

■ Here, the trial court found that the intersection was controlled by both traffic and pedestrian signals. The court noted that three of the traffic signals were suspended over the street, and one was mounted on a post on the east side of the street, but was turned ninety degrees from its normal alignment and faced west rather than north. The pedestrian signal was mounted on the same post and probably displayed a lighted walking figure of a person in "Walk" mode and a red hand in "Don't Walk" mode. The pedestrian signal was aligned properly and cycling normally, according to an inspection made shortly after the accident.

In *DeForrest v. City of Cherry Hills Village*, 990 P.2d 1139 (Colo.App.1999), a division of this court held that a temporary stop sign and a working traffic signal at an intersection displayed conflicting directions to a motorist approaching the intersection. The court noted that a motorist facing an operating traffic light and a temporary stop sign might reasonably assume that the temporary stop sign controlled over the direction displayed on the traffic light.

Plaintiff relies on *DeForrest v. City of Cherry Hills Village, supra*, to argue that because the traffic signals were simultaneously displaying green lights to both plain-

tiff and the southbound motorist, "conflicting directions" were displayed for purposes of a waiver of immunity under § 24–10–106(1)(d)(II). While we agree that such a situation might display conflicting directions to eastbound and southbound motorists, or to an eastbound pedestrian crossing an intersection without a pedestrian signal, those circumstances are not present here. *See Lyons v. City of Aurora, supra.*

Additionally, although plaintiff testified in her deposition that she relied upon the green traffic signal when she proceeded into the intersection and that she did not remember seeing the pedestrian signal, the trial court found that there was no evidence that her view of the pedestrian signal was obstructed. Further, as noted by the trial court, pedestrians are required by statute and the Denver Municipal Code to obey the pedestrian signal. *See* § 42–4–802(5), C.R.S.2001; Denver Rev. Mun.Code 54–536. Finally, the trial court found that it was common in the downtown area for a pedestrian signal to display a direction contrary to the traffic signal.

Therefore, because the intersection had a properly functioning pedestrian signal, the view of which was not obstructed, we conclude that the trial court did not err in determining that "conflicting directions" were not displayed for purposes of a waiver of immunity under § 24–10–106(1)(d)(II). Hence, the trial court properly granted the City's motion to dismiss.

The judgment is affirmed.

Judge PLANK concurs.

Judge MARQUEZ dissents.

Judge MARQUEZ dissenting.

Because I disagree with the majority's analysis, I respectfully dissent.

Section 24–10–106(1)(d)(II), C.R.S.2001, provides that sovereign immunity is waived by a public entity in an action for injuries resulting from "[a] dangerous condition caused by . . . the failure to repair a traffic control signal on which conflicting directions are displayed."

A "dangerous condition" is defined in relevant part as follows at § 24–10–103(1), C.R.S. 2001:

"Dangerous condition" means a physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility.

Thus, to establish a waiver of immunity for a dangerous condition, an injured party must show: (1) the injury occurred as a result of the physical condition of a public facility or the use thereof; and (2) the condition was a dangerous condition as defined in § 24–10–103(1). *Walton v. State,* 968 P.2d 636, 644 (Colo.1998).

Here, the trial court found that at the time of the accident, the post-mounted traffic signal on the east side of Broadway was misaligned so that it was turned ninety degrees from its normal position and faced west rather than north. As a result of the misalignment, the post-mounted traffic signal was facing plaintiff when she attempted to cross Broadway. Plaintiff relied upon the misaligned green traffic light facing her as providing her with the right-of-way to cross Broadway. The court also found that the evidence was undisputed that at the time of the accident the traffic signal lights for southbound traffic, including the misaligned traffic signal light facing plaintiff, were green. It further found that at the time of the accident the pedestrian signal facing plaintiff was probably displaying the solid "Don't Walk" sign. It reasoned that while the misaligned traffic control device and the other traffic control devices were in conflict and potentially dangerous with regard to motorists traveling, at the same time, south on Broadway and east on Cleveland Place, those were not the facts here. Thus it found that the traffic control signal and the pedestrian signal did not display conflicting directions to plaintiff, a pedestrian. I disagree with this analysis.

The statute waiving sovereign immunity speaks to a dangerous condition caused by the failure to repair a "traffic control signal on which conflicting directions are displayed." Section 24–10–106(1)(d)(II). Here, it is undisputed that green lights were simultaneously facing the southbound traffic and plaintiff who was crossing the street in an eastbound direction.

Further, there is no language in that statute restricting its application to traffic control signals facing only one direction. Thus, there is no requirement that the traffic control signals be viewed only from the direction facing plaintiff as she was walking in an eastbound direction. When a green light faces southbound traffic at the same time a green light faces eastbound pedestrians, a dangerous condition exists for both vehicular and pedestrian traffic. Such a condition constitutes an unreasonable risk to the health or safety of the public. *See* § 24–10–103(1).

Additionally, while pedestrians must obey the pedestrian signals, it is not unusual for the pedestrian signal to change to a "Don't Walk" signal while the pedestrian is crossing the street. A continuing green light for the pedestrian in that situation would normally indicate that the crosstraffic is facing a red light and it is safe to continue crossing.

Here, the trial court focused on the pedestrian signal and ignored the green lights. Even if plaintiff entered the intersection against a "Don't Walk" pedestrian signal, because she had a green light facing her, she had no warning that the southbound traffic also had a green light. Further, the southbound traffic had no warning that the eastbound pedestrian traffic also had a green light and, therefore, there might be pedestrians in the crosswalk.

Consequently, in my view, the traffic signals displayed conflicting directions within the meaning of the statute.

I would reverse the trial court's ruling and remand the matter for further proceedings.