24CA0198 Sandoval v Colorado Springs 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0198
El Paso County District Court No. 22CV31378
Honorable Amanda J. Phillips, Judge

Bernard E. Sandoval,

Plaintiff-Appellee,

v.

City of Colorado Springs,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Ramos Law, Brian Hugen, Northglenn, Colorado, for Plaintiff-Appellee

Wynetta P. Massey, City Attorney, W. Erik Lamphere, Division Chief, Colorado
Springs, Colorado, for Defendant-Appellant

¶ 1    Defendant, The City of Colorado Springs, appeals the district court's order concluding that the City had waived its governmental immunity and denying the City's motion to dismiss the complaint filed by plaintiff, Bernard E. Sandoval.  We reverse and remand with directions.

## I.    Background

¶ 2    The following facts are undisputed for purposes of this appeal. While driving northbound on South Tejon Street, Sandoval approached the intersection of South Tejon and East Costilla Street in Colorado Springs.  At the intersection, the traffic signals directing northbound and southbound traffic were inoperative and unilluminated.  The traffic signals directing eastbound and westbound traffic were properly cycling between green, yellow, and red.  Upon approaching the inoperative traffic signal, Sandoval stopped at the intersection and treated it as a four-way stop.  After waiting for two vehicles to go, who had also treated the intersection as a four-way stop, Sandoval entered the intersection.  Sandoval was then struck by Corey Kinzy, who was driving eastbound on Costilla Street.  Kinzy had a green light when he entered the intersection.

¶ 3     Sandoval filed suit against the City and requested relief under two theories of tort — that the City was directly negligent and that it was liable under the theory of respondeat superior because the company in charge of fixing the traffic signal was the City's agent. Sandoval argued that the City waived its protection from tort actions under the Colorado Governmental Immunity Act (CGIA) when it failed "to repair a traffic signal on which conflicting directions [were] displayed." § 24-10-106(1)(d)(II), C.R.S. 2024.

¶ 4     The City moved to dismiss Sandoval's claims against it, under C.R.C.P. 12(b)(1), asserting that immunity under the CGIA had not been waived because the traffic signals were not in conflict at the time of the collision. Specifically, the City argued that state and local traffic laws instruct drivers to yield to vehicles not obligated to stop and that no conflict existed where one vehicle was expected to yield while cross traffic moved as directed by normally operating traffic signals.

¶ 5     Sandoval filed a response alleging the traffic signals were in conflict because, based on the inoperative light, Sandoval "inferred that all traffic lights were out," and it would be "a fair inference" that Kinzy thought that all lights were functioning properly. The

City replied that Sandoval's assumption that all lights were inoperative was insufficient to show that the traffic signals were in conflict.

¶ 6     The district court denied the City's motion to dismiss. The court determined that Sandoval, "as required, treated the intersection as a four-way stop and treated the signal as one would a stop sign." The district court found that the green light displayed to Kinzy and the inoperative light displayed to Sandoval were "not properly functioning" and "displayed conflicting signals to drivers approaching the intersection." The district court denied Sandoval's request for attorney fees.

¶ 7     This appeal followed.

## II.     Waiver of Immunity

¶ 8     The City contends that the district court erred by concluding that the City's immunity had been waived under section 24-10-106(1)(d)(II). We agree.

### A.     Standard of Review and Applicable Law

¶ 9     "Whether a claim is barred on grounds of immunity under the CGIA is a question of subject matter jurisdiction . . . ." *Douglas v. City & Cnty. of Denver*, 203 P.3d 615, 617 (Colo. App. 2008). Where

"the underlying facts are undisputed, the trial court's jurisdictional determination is one of law, which we review de novo." *Id.* at 618. "In interpreting the [C]GIA, our goal is to give effect to the intent of the General Assembly." *Lyons v. City of Aurora*, 987 P.2d 900, 903 (Colo. App. 1999). "In the construction of a waiver provision of the [C]GIA, strained or forced interpretation of a statutory term should not be adopted." *Id.* Provisions waiving immunity are "broadly construed in the interest of compensating victims of governmental negligence." *Douglas*, 203 P.3d at 617–18.

## B.    Analysis

¶ 10    The City contends that, under section 24-10-106(1)(d)(II), the district court erred when it found the traffic signals were in conflict. We agree.

### 1.    The Traffic Signals Were Not Conflicting

¶ 11    The CGIA generally grants public entities immunity from "liability in all claims for injury which lie in tort." § 24-10-106(1). However, the legislature has outlined specific scenarios in which sovereign immunity is waived. *See id.* One such scenario is when "[a] dangerous condition [is] caused by the failure . . . to repair a traffic control signal on which conflicting directions are displayed."

4

§ 24-10-106(1)(d)(II). The CGIA does not define the term "conflicting." But a division of this court interpreted the word to mean "being in conflict, collision, [or] opposition." *Lyons*, 987 P.2d at 903 (quoting Webster's Third New International Dictionary 477 (1986)). As a verb, "conflict" is synonymous with "show[ing] variance, incompatibility, irreconcilability, or opposition." *Id.* (quoting Webster's Third New International Dictionary 477 (1986)).

¶ 12    The City asserts that an inoperative signal directing traffic in one direction is not inherently in conflict with a green signal in the cross direction.

¶ 13    In *DeForrest v. City of Cherry Hills Village*, 990 P.2d 1139, 1143 (Colo. App. 1999), a division of this court held that immunity was waived where a driver faced both a temporary stop sign and a traffic signal red light. The driver relied on the temporary stop sign as the controlling signal, and after stopping at the sign, entered the intersection where she was hit by a driver who had a green light in the cross direction. *Id.* at 1141. The stop sign "directed a motorist to stop and then go . . . [while] a motorist facing a red traffic light would not stop and then go but would be required to wait until the signal turned green." *Id.* at 1144. The division concluded that the

5

stop sign and red light were conflicting signals because they displayed incompatible directions to drivers. *Id.*

¶ 14    Unlike *DeForrest,* Sandoval did not face incompatible directions when he came to the intersection. Pursuant to Colorado traffic regulations, "[w]hen a driver approaches an intersection and faces a traffic control signal that is inoperative" the driver must follow "the provisions controlling entrance to a through street . . . from a stop sign . . . , as provided under section 42-4-703[, C.R.S. 2024]." § 42-4-612(1)(a), C.R.S. 2024. "[E]very driver of a vehicle approaching a stop sign shall stop" and "yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard." § 42-4-703(3). The City's traffic code mirrors the state traffic regulations. *See* Colo. Springs City Code § 10.17.109.A. ("Whenever a driver approaches an intersection and faces a traffic control signal which is inoperative . . . , the driver shall treat the signal as a 'Stop' sign . . . ."); Colo. Springs City Code § 10.3.101.A. ("The driver of a vehicle shall stop in obedience to a 'Stop' sign . . . and shall proceed cautiously yielding to vehicles not so obligated to stop . . . and

which are within the intersection or approaching so closely as to constitute an immediate hazard . . . .").

¶ 15    Upon approaching the inoperative traffic signal, Sandoval was expected to treat the light as a stop sign.  However, Kinzy had no such limitations. Instead, facing a green signal, Kinzy had the right to proceed through the intersection.  *See* § 42-4-604(1)(a)(I), C.R.S. 2024.  Unlike *DeForrest*, where the driver was instructed to stop and then go, and to stop and wait simultaneously, Sandoval was not faced with contradicting instructions.  990 P.2d at 1144.  Instead, the inoperative traffic signal directed Sandoval to *stop and then go when safe*, while the green light directed Kinzy to *go without stopping*.  Because Sandoval and Kinzy could have followed these directions simultaneously without issue, the signals were not incompatible.

2.    Sandoval Was Not Permitted to Treat the Inoperative Light as a Four-Way Stop

¶ 16    Sandoval argues the traffic lights were conflicting because "the eastbound light was operating, and north/south lights were out, suggesting to those drivers that all lights were out for all directions and drivers should treat the intersection as a four-way stop."  The

7

district court's order also relied on this argument, finding that "Plaintiff, as required, treated the intersection as a four-way stop and treated the signal as one would a stop sign." This argument relies on a misinterpretation of existing traffic codes.

¶ 17 As previously discussed, the relevant state and city traffic codes call for a driver facing an inoperative traffic signal to treat it as a stop sign and yield to vehicles in or approaching the intersection. *See* §§ 42-4-612(1)(b), -703(3); Colo. Springs City Code §§ 10.17.109.A, 10.3.101.A. Sandoval does not cite, nor can we find, any legal authority that explicitly calls for drivers facing an inoperative traffic signal to treat it as a four-way stop. Instead, Sandoval was expected to stop and wait for the intersection to be clear to enter while Kinzy retained the right-of-way. Sandoval's assumptions that all signals were out and that other cars would stop does not rest on any legal authority.

¶ 18 Because the traffic signals did not display conflicting directions, the City's immunity was not waived under section 24-10-106(1)(d)(II). Thus, the City is entitled to the dismissal of Sandoval's claims against it. Therefore, we reverse the district court's order.

## III.  Attorney Fees

¶ 19    The City requests attorney fees under section 13-17-201(1), C.R.S. 2024, and C.A.R. 39.1.  A defendant is entitled to reasonable attorney fees in defending all actions for injury that lie in tort "where any such action is dismissed on motion of the defendant prior to trial under rule 12(b)."  § 13-17-201(1).  Because the City is entitled to the dismissal of Sandoval's tort claims against it, it is also entitled to recover its attorney fees incurred both in the district court and on appeal.

¶ 20    We exercise our discretion under C.A.R. 39.1 to remand the matter to the district court to determine the amount of those fees.  *See Cronk v. Bowers*, 2023 COA 68M, ¶ 36 (observing that "the district court is better positioned to address the necessary factual determinations" related to a fee request).

## IV.  Disposition

¶ 21    The district court's order denying the City's motion to dismiss is reversed, and the case is remanded to the district court to enter an order dismissing Sandoval's claims against the City.  In addition, the district court shall conduct such proceedings as necessary to determine the amount of the City's reasonable attorney fees.

9

JUDGE PAWAR and JUDGE SCHUTZ concur.